# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COBB/SWARTHOUT, Minors.

UNPUBLISHED
June 16, 2016

No. 329639
Midland Circuit Court
Family Division
LC No. 14-004426-NA

Before: SAWYER, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Respondent[1] father appeals as of right from the circuit court's order terminating his parental rights to his youngest daughter, CC, and his infant son, AC. The circuit court cited three statutory grounds for termination, each of which respondent contests on appeal: (1) MCL 712A.19b(3)(c)(*i*) ("The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."), (3)(g) ("The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."), and (3)(j) ("There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."). We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

As is regrettably common, this termination matter arises out of the parents' addiction to various narcotics. At the outset of the proceedings, respondent was living with his girlfriend (who is the mother of CC and AC), along with CC, AC, and respondent's children from a prior relationship.[2] According to the allegations in the initial petition, the family was brought to the attention of petitioner, Department of Health and Human Services (DHHS), after AC tested positive—at birth—for opioids, namely hydromorphone (more commonly known by the trade name Dilaudid) and hydrocodone (more commonly known by the trade name Vicodin). CC had

---

[1] Respondent mother is not a party to this appeal. Accordingly, we refer to respondent father in the singular as "respondent" *infra*.

[2] The only children directly at issue in this appeal are CC and AC.

-1-

previously tested positive, at birth, for marijuana. [Initial Petition, November 20, 2014.] Following a preliminary hearing, the youngest children, including CC and AC, were removed from the parents' household and placed with their maternal grandmother, while their older siblings were placed with the paternal grandmother.

Roughly a month after the children were removed, an adjudication hearing was held. Respondent and the girlfriend entered a jurisdictional plea, admitting to the contents of the amended petition. In pertinent part, respondent admitted that (1) he had used "bath salts" in the past,[3] (2) he had previously "tested positive for Amphetamine, Methamphetamine, and THC," (3) "at the beginning of deer season," he drank "the remnants leftover from making Meth at a friend's house," and (4) the prior month, police officers and agents of Child Protective Services, while evaluating the housing conditions of the children, "found a burnt spoon . . . which contained a milky substance; numerous amounts of used needles in a wood stove . . . and, a marijuana plant[.]" Further, the girlfriend admitted that, around Halloween of 2014, she reported respondent to the police for shoving her and punching her in the head twice while children were present in the home.

Over the course of seven months following adjudication, the circuit court held a series of review hearings. As of the first review hearing, which occurred in mid-March 2015, respondent was compliant with random drug screening, and he had tested negative in every screen. Moreover, DHHS reported that his supervised visits with his children were "going well[.]" But respondent was noncompliant with other ordered services, including "Baby Court Services" and individual counseling.

Unfortunately, respondent's compliance did not improve over time, and his drug screens worsened considerably. Moreover, despite numerous requests, and his claim that he "had multiple jobs," respondent failed to document a legal source of income at any time. Accordingly, consistent with the recommendation of the children's lawyer-guardian ad litem (LGAL), DHHS sought and was granted leave to file a termination petition against respondent.

At the subsequent termination hearing, when the assigned DHHS caseworker was asked to describe respondent's supervised visits with CC and AC, she replied,

> Some visits, I think, go very well. They engage well, there's interaction with [respondent] and the children playing on the floor, putting puzzles together, reading books together. And sometimes the visit looks very different, and [respondent] will be seated on the couch staring out the window, pacing the floor, engaging in some sort of activity on his cell phone. So, I've—I've seen both sides of that.

---

[3] It is unclear from the record whether respondent's use of "bath salts"—a synthetic compound that mimics marijuana—occurred before or after such compounds were scheduled as controlled substances.

The caseworker noted that CC was bonded with respondent, but opined that AC—"the baby"—was still too young to have formed such a bond. Neither parent was able to provide suitable housing for the children; respondent was "living on a friend's property in a motor home," and the girlfriend was homeless.

Respondent testified at the termination hearing. He acknowledged that he was a reformed alcoholic and that his alcoholism had spanned 17 years. He also admitted that, although he "[p]retty much" considered himself to be a "drug addict," he had, throughout the pendency of the lower court proceedings, denied that he was an addict. He had been addicted to methamphetamine for "[o]ver a year," but he had failed to request help during the proceedings or to enter any sort of treatment program. Respondent further admitted that he had used methamphetamine "[a]bout" one week before the termination hearing, and he agreed that methamphetamine "is a very addictive drug," which "hooks you forever[.]"

In terms of treatment, respondent indicated that he was willing to do "[w]hatever it takes" to avoid termination, including the inpatient treatment that he thought would be "necessary" to break his methamphetamine addiction.[4] On cross examination, however, respondent opined that, while he "could use help" to "get clean," he was "not doing too bad . . . on [his] own" thus far.

At the close of the termination hearing, the circuit court took the matter under advisement, indicating that it would later issue a written opinion and order, which it did several days later. After stating its conclusion that several statutory grounds for termination had been established by clear and convincing evidence, the circuit court proceeded to its best-interests determination. It found, by a preponderance of the evidence that termination was in the best interests of CC and AC. In reaching that conclusion, the circuit court acknowledged that, as set forth by the seminal decision *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010), a child's placement with a relative is a factor that *must* be considered in the best-interests analysis. But nowhere in the circuit court's best-interests analysis did it expressly consider the fact that CC and AC were placed with their maternal grandmother at the time of termination. [Op, pp 20-21.]

II. ANALYSIS

On appeal, respondent first argues that the circuit court clearly erred by finding that termination was appropriate under MCL 712A.19b(3)(c)(*i*), (g), and (j). We disagree.

We review "for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Any related statutory interpretation poses a question of law reviewed de novo. *Id.*

---

[4] Immediately before closing arguments, respondent's counsel informed the circuit court that respondent had arranged to enter an "extended," inpatient treatment program, with his "preliminary intake" to take place later that same day.

To resolve respondent's instant claim of error, we need only analyze the first statutory ground cited by the circuit court, MCL 712A.19b(3)(c)(*i*), which provides:

> (c)  The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Here, more than 182 days elapsed between the initial dispositional order and termination, and it is uncontroverted—indeed, it was established by respondent's own admissions—that the condition that led to adjudication, drug addiction, still existed.  Nevertheless, respondent argues that the circuit court clearly erred by failing to recognize that there was a reasonable likelihood that his methamphetamine addiction would be rectified within a reasonable time considering the age of CC and AC.

Respondent's argument is unpersuasive.  He has struggled with addiction issues for well over a decade, having lived as an alcoholic for 17 years.  Now he has become addicted to "a very addictive drug," methamphetamine, which, he agrees, "hooks you forever[.]"  His failure to acknowledge his addiction problem throughout the lower court proceedings—until termination was imminent—indicates that respondent's path to recovery will be, at best, a treacherous one, with relapse a danger at every turn.  That is particularly true given his admission, at the outset of the proceedings, that he previously drank the toxic "remnants leftover from making Meth[.]"  A person who admits to such conduct, but in the next breath denies addiction, is a person who is fundamentally unready to address their substance abuse issues.  Indeed, even at the termination hearing, while going through the motions of asking for help, respondent continued to suggest that, notwithstanding his use of methamphetamine just a week before, he was "not doing too bad" at self-treating his addiction.

Moreover, to the extent that respondent argues that DHHS should have provided him with inpatient treatment services, his argument is entirely misplaced.  Although DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that *are* offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (emphasis added). Respondent admittedly denied that he had a substance abuse issue until he testified at the termination hearing, and he failed to meaningfully participate in the treatment services that *were* offered to him.  Under such circumstances, there was no reason for DHHS to expect that respondent was willing to participate in, or would benefit from, inpatient therapy.  As the old adage puts it, you can lead a horse to water, but you cannot make it drink.  In the same way, DHHS can offer treatment, but it cannot force respondents to benefit.

Even though respondent's decision to enter inpatient therapy came at the eleventh hour, and thus may have been nothing more than a strategic contrivance, his stated desire to "get clean" might well be genuine.  If it is, we applaud it.  But his desire to change is not evidence

-4-

that he will ever actually do so, let alone within a reasonable time given the age of CC and AC. On the contrary, as the circuit court recognized, respondent's actions speak louder than his words, and those actions evince no reasonable likelihood that he will master his substance abuse problems in the near future. Hence, we are not left with a definite and firm conviction that the circuit court made a mistake, and we affirm its holding that termination was appropriate under MCL 712A.19b(3)(c)(*i*).[5]

Our above conclusion, however, does not fully resolve this matter. Respondent also argues that the circuit court clearly erred by failing to duly consider the children's placement with their maternal grandmother as part of its best-interests determination. We agree.

> [B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [*In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012) (quotation marks and citations omitted).]

As in *Olive/Metts*, here the circuit court "did not expressly address the fact that the two youngest children were residing with a [] relative."[6] See *id.* at 43-44.

Consequently, we must vacate the circuit court's best-interests determination and remand this matter to the circuit court for further proceedings consistent with this opinion. See *id.* We instruct the circuit court to conduct all necessary remand proceedings within 91 days of the date of this opinion. In the interest of judicial economy, and for the benefit of the minor children involved, we retain jurisdiction.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder

---

[5] "Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

[6] The maternal grandmother qualifies as a "relative" under the pertinent provision, MCL 712A.19a(6)(a), as the term "relative" is defined by MCL 712A.13a(1)(j).

# Court of Appeals, State of Michigan

## ORDER

In re Cobb/Swarthout Minors

Docket No.    329639

LC No.    14-004426 NA

David H. Sawyer
Presiding Judge

Joel P. Hoekstra

Kurtis T. Wilder
Judges

---

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 91 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. The proceedings on remand are limited to the best interests issue as stated on page 5 of the accompanying opinion.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUN 16 2016
Date

Chief Clerk